IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GARY WILLIAM PLUM,
MAGNUM LAND SERVICES, LLC
and BELMONT RESOURCES, LLC,

    Plaintiffs,

v.                                          Civil Action No. 1:10CV40
                                                             (STAMP)

TUNNELTON COOPERATIVE
COAL COMPANY and
CNX GAS COMPANY, LLC,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFFS' MOTION TO EXCEED PAGE LIMIT AND
DENYING DEFENDANTS' MOTION TO DISMISS, OR,
IN THE ALTERNATIVE, MOTION TO STAY PROCEEDINGS**

I. Procedural History

The plaintiffs filed this declaratory action seeking a declaration that plaintiff Gary Willard Plum ("Plum") is the owner of the oil and gas underlying a certain tract of land located in Preston County, West Virginia, and that his oil and gas lease with Magnum Land Services, LLC ("Magnum"), which was later assigned to Belmont Resources, LLC ("Belmont"), is a valid oil and gas lease. The complaint also seeks damages for slander of title.

The defendants filed a motion to dismiss, or, in the alternative, motion to stay proceedings. The plaintiffs filed a response in opposition, to which the defendants replied. In filing their response, the plaintiffs also filed a motion to exceed page limits. For the reasons stated below, the plaintiffs' motion to exceed the page limit is granted; and the defendants' motion to

dismiss, or, in the alternative, motion to stay proceedings, is denied.

## II. Facts[1]

Magnum, and its assignee, Belmont, allegedly became aware of a 2008 Memorandum of Lease filed by CNX Gas Company, LLC ("CNX Gas"), which pertains to oil and gas interests of Tunnelton Cooperative Coal Company ("Tunnelton") under "certain tracts or parcels of land containing approximately 5,400 acres, more or less, situate, in Kingwood and Reno Districts, Preston County, West Virginia, more particularly described" on the exhibit attached and entitled "2008 Memorandum of Lease." Attached to the Memorandum of Lease is Exhibit Map A, which denotes the approximate outline of the 5,400 acres subject to the agreement. The Map depicts a shady area, representing the 5,400 acres referred to in the Memorandum of Lease. Within that shady area is an oil and gas estate owned, according to the plaintiffs in this civil action, by Plum, which was later leased to Magnum, and assigned to Belmont. Upon learning of this Memorandum of Lease, Magnum and Belmont asserted claims to the oil and gas estate to Tunnelton and CNX Gas in a letter dated December 3, 2009.

Approximately one month before the above-styled civil action was filed, Tunnelton and CNX Gas filed a complaint for declaratory judgment in the Circuit Court of Preston County, West Virginia

---

[1]In accordance with the applicable standard of review, stated below, this Court will accept, for the purposes of deciding this motion, the factual allegations contained in the complaint as true.

2

("state court action") against Belmont, Magnum, and certain other parties identified as the A.F. Gibson heirs.[2] In that complaint, Tunnelton and CNX Gas seek to quiet title to the oil and gas within an underlying a parcel of land, situated in Reno District, Preston County, West Virginia, designated as Reno District Tax Map 3, Parcel 24 ("Gibson Tract"). This land is allegedly owned in fee by Tunnelton and leased to CNX Gas. The complaint, however, does not seek declaratory judgment as to the land owned by Plum, designated as Reno District Tax Map 7, Parcel 17 (the "Plum Tract"). In their answer to the state court action, the A.F. Gibson heirs, Magnum, and Belmont asserted adverse claims to the property. They also asserted a counterclaim,[3] alleging that CNX Gas slandered Magnum and Belmont by recording the Memorandum of Lease.

Prior to filing an answer in the state court action, however, Plum, Magnum, and Belmont filed their complaint to commence the above-styled civil action, seeking declaration that Plum is the owner of the oil and gas within and underlying the Plum Tract, and that Plum's oil and gas lease with Magnum, thereafter assigned to Belmont, is valid. The complaint also seeks damages for slander of title as to the Memorandum of Lease by CNX Gas.

---

[2]These parties are purported lessors and other potential interest holders in several oil and gas interests at issue in the state court action.

[3]The defendants filed several counterclaims. This Court only discusses the one that is relevant to this case.

## III. Applicable Law

### A. Motion to Dismiss

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the factual allegations contained in the complaint as true. Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. § 1356, at 298. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is

directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357, at 304, 310.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances. Rogers, 883 F.2d at 325. A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The facts alleged must be sufficient "to raise a right to relief about the speculative level." Twombly, 550 U.S. at 555.

B. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir.

1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The Court must perform a threshold inquiry to determine whether a trial is needed--whether, in other words, "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.") (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 812 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

IV. Discussion

A. Plaintiffs' Motion to Exceed Page Limit

In filing their response to the defendants' motion to dismiss, or, in the alternative, motion to stay proceedings, the plaintiffs also filed a motion for leave to file their response in excess of the page limitations mandated under Rule 7.02 of the Local Rules. For good cause shown, the plaintiffs' motion to exceed the page limit is granted.

B. Defendants' Motion to Dismiss, or, in the Alternative, Motion to Stay Proceedings

1. Refusing to Convert Defendants' Motion to Dismiss into Motion for Summary Judgment

As an initial matter, this Court discusses the defendants attaching a copy of the state court action complaint and answer, as well as an affidavit of William Gillenwater, to their motion to dismiss. A motion to dismiss must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 "where materials outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). See Laughlin v. Metro., Washington Airports Auth., 149 F.3d 253, 260-261 (4th Cir. 1998). However, all parties must be given notice when a court is treating

a Rule 12(b)(6) motion as a motion for summary judgment. Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985). Moreover, "[o]nce notified, a party must be afforded 'a reasonable opportunity for discovery' before a Rule 12(b)(6) motion may be converted and summary judgment granted." Id. (quoting Johnson v. RAC Corp., 491 F.2d 510, 515 (4th Cir. 1974)).

"While 'reasonable opportunity' requires notice that the court is 'treating the 12(b)(6) motion as a motion for summary judgment with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery,' it does not require formal notification by the court." Piner v. E.I. Dupont De Nemours & Co., 238 F.3d 414, at *5 (4th Cir. 2000) (unpublished). Here, the plaintiffs were aware, and explicitly admitted, that matters outside the pleadings were attached to the defendants' motion to dismiss. Indeed, the plaintiffs even attached affidavits to their response. Thus, the plaintiffs had notice that the defendants' motion to dismiss could be converted into a motion for summary judgment.

Accordingly, this Court finds that it could properly convert the defendants' motion to dismiss into a motion for summary judgment. See Laughlin, 149 F.3d at 253 (holding that converting motion to dismiss into motion for summary judgment was proper "[b]ecause appropriate notice was ample, [the plaintiff's] attorney had the responsibility, if he thought further discovery was necessary to adequately oppose summary judgment, to make a motion

8

under Rule 56(f).") (internal citations omitted).  Nevertheless, because the defendants' motion to dismiss can be ruled upon based upon the pleadings, without reference to the attached materials, this Court therefore declines to convert the motion to dismiss into a motion for summary judgment.  Accordingly, the motion to dismiss will be considered under the Rule 12(b)(6) standard of review.

2. <u>Merits of Defendants' Motion to Dismiss</u>

In their motion to dismiss, the defendants contend that the plaintiffs' complaint must be dismissed for failure to state a claim upon which relief can be granted because the plaintiffs can prove no set of facts under which they can prevail on their claims for slander of title.  Specifically, CNX Gas asserts that it does not own and has not acquired any right, title, or interest in the Plum Tract, and that the Memorandum of Lease does not indicate otherwise.  Additionally, because the Memorandum of Lease was filed on or about May 5, 2008, and the lease from Plum to Magnum at issue was entered into on April 7, 2009, the defendants argue that the Memorandum of Lease could not slander Magnum's or Plum's claim of title.

In response, the plaintiffs argue that the Memorandum of Lease and attached Map are false statements because they purport to convey oil and gas interests containing approximately 5,400 acres that include the Plum Tract, as evidenced by the Map's shaded area.  Furthermore, although the defendants have filed the affidavit disclaiming any interest in the Plum Tract, CNX Gas has not filed

9

corrective documents to cure the alleged existing slander of title. Finally, the plaintiffs argue that this slander has caused special damages and diminished the value of their title in the eyes of third parties.

This Court holds that because the plaintiffs have plead sufficient facts under Rule 8 of the Federal Rules of Civil Procedure, the complaint may proceed at this time. In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. at 544, the United States Supreme Court addressed the sufficiency of an antitrust complaint pursuant to Federal Rule of Civil Procedure 8(a)(2). The class of plaintiffs in <u>Twombly</u> alleged that major telecommunications providers engaged in parallel conduct indicative of a conspiracy to restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. In reviewing the plaintiffs' complaint, the Court utilized a "plausibility standard," <u>id.</u> at 1698, under which a complaint must contain "enough facts to state a claim to relief that is plausible on its face," <u>id.</u> at 1974. The Court rejected the oft-quoted language from its decision in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), that dismissal under Rule 12(b)(6) is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court stated that <u>Conley</u>'s "no set of facts" language "earned its retirement" because it had spawned among courts the unintended literal reading that "any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown

from the face of the pleadings." Twombly, 127 S. Ct. at 1968. A dismissal must be ordered if the legal theories or factual allegations pleaded are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992).

Slander of title is a recognized cause of action in West Virginia. TXO Production Corp. v. Alliance Resources Corp., 419 S.E.2d 870, 879 (W. Va. 1992). To prove a claim of slander of title the plaintiff must establish the following elements: "(1) publication of; (2) a false statement; (3) derogatory to plaintiff's title; (4) with malice; (5) causing special damages; and (6) as a result of diminished value in the eyes of third parties." Id.

A review of the complaint reveals that the plaintiffs have met their obligation to provide the grounds for relief. Here, the plaintiffs have plead facts sufficient to state a claim for slander of title, particularly that the defendants recorded a Memorandum of Lease with allegedly false information that was derogatory to the plaintiffs' interests and caused damages. The defendants' motion to dismiss, therefore, is denied.

C. Motion to Stay

Alternatively, the defendants argue that this Court should either dismiss this action or stay the proceedings under Colorado River abstention doctrine, which permits federal courts to stay or dismiss a case over which the court has subject matter jurisdiction due to the existence of a concurrent state court proceeding, based

upon "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Colorado River Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).

The United States Court of Appeals for the Fourth Circuit has summarized the approach for applying the Colorado River doctrine:

> The threshold question in deciding whether Colorado River abstention is appropriate is whether there are parallel federal and state suits. If parallel suits exist, then a district court must carefully balance several factors, with the balance heavily weighted in favor of the exercise of jurisdiction. Although the prescribed analysis is not a hard-and-fast one in which application of a checklist dictates the outcome, six factors have been identified to guide the analysis: (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. In the end, however, abstention should be the exception, not the rule, and it may be considered only when the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.

Chase Brexton Health Services, Inc. v. Maryland, 411 F.3d 457, 463-64 (4th Cir. 2005) (internal quotations and citations omitted).

1. Parallel Proceedings

Following the Fourth Circuit's analysis in Chase Brexton, this Court must first determine whether the state and federal actions are sufficiently similar to constitute parallel proceedings before weighing the Colorado River factors to decide whether to dismiss or

12

stay the case. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." New Beckley Mining Corp. v. International Union, United Mine Workers of America, 946 F.2d 1072, 1073 (4th Cir. 1991). However, "suits need not be identical to be parallel, . . . and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." AAR Int'l, Inc. v. Nimelias Enter. S.A., 250 F.3d 510, 518 (7th Cir. 2001) (internal citations omitted). "The question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state litigation] will dispose of all claims presented in the federal case." Id.

This Court finds that the civil action proceeding before this Court and the state court are not parallel proceedings. It is true that both actions require the interpretation and effect of the Memorandum of Lease and attached Map. It is also true that Tunnelton, CNX Gas, Magnum, and Belmont are common parties in both actions. Nevertheless, this federal declaratory action specifically involves the Memorandum of Lease as to the Plum Tract, a tract of land that is not indicated in the state action complaint. Rather, the state court action focuses on the Gibson Tract. Indeed, Plum is not even a party to the state court action. Moreover, there is an additional claim for punitive damages in this case that is not made and will not be litigated in the state court action. As such, there is not a substantial likelihood that the

state court litigation will dispose of all the claims presented in the action before this Court. Accordingly, the federal and pending state actions do not constitute parallel proceedings. Failing to satisfy this preliminary requisite, dismissal or a stay of the federal action under the Colorado River doctrine is appropriate.

2. Application of *Colorado River* Factors

Even assuming that the federal and state actions constitute parallel proceedings, this Court nevertheless holds that the balance of factors counsel against abstention at this time. A decision declining to exercise jurisdiction over a federal action because of parallel litigation in state court "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Gannett Co., Inc. v. Clark Constr. Group, Inc., 286 F.3d 737, 744 (4th Cir. 2002) (quoting Moses H. Cone v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)).

a. Assumption of Jurisdiction Over the Property

The first factor in the Colorado River analysis is whether either court has assumed jurisdiction over the property in question. Chase Brexton, 411 F.3d at 463. The defendants claim that jurisdiction over the entire 5,400 acre leasehold tract covered by the Memorandum of Lease was brought into the state court action when Magnum and Belmont filed their counterclaim against CNX Gas for slander of title. The plaintiffs respond that the state

14

court has only assumed jurisdiction over the limited parcel at issue in that action, and not specifically over the Plum Tract that is at issue here.

At this time, this Court is unable to determine, based upon the parties' pleadings, whether the state court has assumed jurisdiction over the entire 5,400 acres. Accordingly, this Court cannot use this factor to either weigh in favor, or against, abstention.

      b. <u>Convenience of the Federal Forum</u>

The defendants admit, and the plaintiffs do not dispute otherwise, that this factor does not weigh in favor of abstention because the federal forum is no less convenient to the parties.

      c. <u>Avoidance of Piecemeal Litigation</u>

The third factor to consider is whether federal jurisdiction creates the danger of piecemeal litigation. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." <u>Gannett Co., Inc.</u>, 286 F.3d 737 at 744. However, the potential for conflicting outcomes, without more, is insufficient to warrant staying the exercise of federal jurisdiction. <u>Chase Brexton</u>, 411 F.3d at 457 (quoting <u>Colorado River</u>, 424 U.S. at 816). Rather, the exercise of jurisdiction "must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly ill-suited for resolution in duplicate forums." <u>Gannett</u>, 286 F.3d at

744. The critical inquiry in avoiding piecemeal litigation is not whether there is formal symmetry between the two actions, but whether there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." American Reliable Ins. Co. v. Stillwell, 212 F. Supp. 2d 621, 630 (N.D. W. Va. 2002).

As discussed above, the state litigation has not, and will not, dispose of the claims presented in this Court. Thus, there is little to be gained in judicial economy by abstaining from exercising jurisdiction.

> d. Relevant Order of the Exercise of Jurisdiction

The fourth factor to be considered under Colorado River is the order in which courts obtained jurisdiction and the progress achieved in each action. Relevant to this inquiry is not only the order in which the complaints were filed, but also how much progress has been made in the two actions. See Moses H. Cone Mem'l. Hosp., 460 U.S. at 22. Further, as the United States District Court for the Southern District of West Virginia has observed at least two policy considerations appear to underlie this fourth factor in the Colorado River analysis:

> First, the more that a state court lawsuit has progressed, the greater the state's own investment and involvement in the proceeding. As a matter of comity, the more the state has invested its time and resources into the proceedings, the less appropriate it is for a federal court to intervene and disrupt those proceedings. See Gannett, 286 F.3d at 748 (noting that abstention is based in part on principles of comity). Second, the longer that the party who now seeks federal court intervention has actively participated in the state court

> proceedings, the more that party has forfeited any right to a federal forum. See Vulcan [Chemical Technologies, Inc. v. Barker, 297 F.3d 332, 343 (4th Cir. 2002)] (finding abstention appropriate in part because the case "was gladly litigated by both parties in California," and that only after Vulcan had received a negative outcome did it seek to "bypass the procedure that [it] had elected to follow" by filing suit in federal court).

Eastern Associated Coal Corp. v. Skaggs, 272 F. Supp. 2d 595, 601 (S.D. W. Va. 2003).

Here, because this federal action was filed approximately one month after the state court action, it is unlikely that the state court's investment has progressed significantly beyond that of this Court. The parties do not dispute otherwise. Furthermore, because Plum is not a party in the state court action, he has not actively participated in that action so as to forfeit his right to this federal forum. In light of these facts, this Court finds that the fourth factor counsels in favor of retaining jurisdiction.

    e. <u>Source of Applicable Law and Adequacy of State Court Proceedings</u>

These fifth and sixth factors require this Court to consider whether state law provides the rule of decision on the merits and the adequacy of state court proceedings. "[T]he Supreme Court has made clear that the presence of state law and the adequacy of state proceedings can be used only in 'rare circumstances' to justify <u>Colorado River</u> abstention." <u>Gannett Co., Inc.</u>, 286 F.3d at 746 (quoting <u>Moses H. Cone</u>, 460 U.S. at 26). Indeed, "[t]hat state law is implicated . . . does not weigh in favor of abstention, particularly since both parties may find an adequate remedy in

either state or federal court." Id. at 747 (internal quotations omitted). The Fourth Circuit has recognized that in diversity cases, "federal courts regularly grapple with questions of state law, and abstention on the basis of the presence of state law, without more, would undermine diversity jurisdiction." Id.

Here, nothing on the record suggests that the federal forum is inadequate to protect the rights of the plaintiffs, or that the state forum is more adequate to protect such rights. Accordingly, the mere presence of state law does not weigh in favor of declining to exercise jurisdiction.

Considered together, the Colorado River factors do not indicate the presence of exceptional circumstances which warrant withholding the exercise of jurisdiction at this time. Therefore, this Court believes that even if parallel proceedings did exist, a dismissal or a stay of this action pending the outcome of the state court action is not the appropriate course.

## V. Conclusion

For the reasons set forth above, the plaintiffs' motion to exceed the page limit is GRANTED; and the defendants' motion to dismiss, or, in the alternative, motion to stay proceedings, is DENIED.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to counsel of record herein.

DATED:      August 11, 2010

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE